THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PROTEGRITY CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 3:08-cv-618 |
| | ) |
| INGRIAN NETWORKS, INC., and | ) |
| | ) |
| SAFENET, INC. | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MOTION OF DEFENDANTS INGRIAN NETWORKS and SAFENET, INC.
FOR A STAY PENDING REEXAMINATION**

**I.    INTRODUCTION.**

Defendants, Ingrian Networks, Inc., and SafeNet, Inc., (collectively "Defendants"),

respectfully move pursuant to Local Rule 7 for a stay of this lawsuit pending the outcome of the

recently-filed request for *ex parte* reexamination of U.S. Patent No. 6,321,201 by Voltage

Security, Inc.

Voltage's request demonstrates a very strong probability that the claims in the '201

patent will be declared unpatentable or otherwise amended in reexamination, which could render

Protegrity's allegation of infringement of the '201 patent moot.  Accordingly, a stay is

warranted.  There is a liberal policy in favor of stays in such circumstances and the three factors

that the Court must consider – (1) whether a stay would unduly prejudice Protegrity; (2) whether

a stay would simplify issues and trial; and (3) the stage of litigation – all weigh in favor of such

relief.

The stay should also extend to proceedings on the '980 and '129 patents, excepting only

Oral Argument
Requested

Defendants' pending and fully-briefed Motion to Dismiss Count II of Protegrity's complaint [Dkt. 70]. Protegrity identified a single product, DataSecure, as infringing all three of the patents-in suit and has identified a number of witnesses who will testify concerning each patent. Further proceedings will necessarily require substantial overlapping documentary, testimonial and expert discovery on both liability and damages issues. Without a comprehensive stay the parties and the Court would be forced to proceed with discovery and pre-trial preparation regarding the '980 and '129 patents now, and then required to duplicate this effort months later for the '201 patent, resulting in a needless waste of time, effort and expense. Accordingly, a stay of proceedings, not only for the '201 patent but all the patents is in order.

## II.    BACKGROUND.

Protegrity filed its Complaint on April 25, 2008, claiming ownership of U.S. patents 6,321,201 ("the '201 patent"), 6,963,980 ("the '980 patent") and 7,325,129 ("the '129 patent"). *See* Complaint [Dkt. 1]. On September 24, 2008, Defendant, Ingrian Networks, Inc. answered and filed counterclaims for declaratory judgment of non-infringement and invalidity. *See* Answer [Dkt. 14]. Shortly thereafter, the Court entered an Initial Case Management Order [Dkts. 31, 32] ("CMO"), modeled after the Sedona Conference Report. *See* Declaration of William J. Cass filed in support of Defendants' Motion to Stay (hereinafter "Cass Dec."), CMO ¶ 4, attached thereto as Exhibit A; Report of the Sedona Conference Working Group on the Markman Process, June 2006 Public Comment Version, at p. 2. Pursuant to the CMO a *Markman* hearing was held on January 11, 2010, and the Court issued its findings on claim construction via telephone conference with the parties on March 2, 2010. *See* [Dkt. 60]. [1]

---

[1]      SafeNet, Inc. now owns Ingrian and was added as a party to this litigation by consent motion, filed on August 16, 2010 [Dkt. 79]. In order to reflect the change in parties, Protegrity

(Continued)

Oral Argument
                                                              Requested

Since that time, Protegrity has been content to let this case languish.  Discovery has commenced, but is far from complete.  The parties have exchanged both interrogatories and document requests, and responses thereto.  Depositions, however, have not been noticed or discussed by either party.  Expert disclosures have not been provided and expert discovery has not otherwise commenced.  On October 15, 2010 the parties engaged in mediation in an effort to settle the case, but were unable to do so.  Nothing of substance has happened since.  An updated case management order has not been issued, and a trial date has not been set.

While substantially ignoring this case, Protegrity brought suits in this Court alleging infringement of the same patents here at issue against two other database security vendors, Voltage Security, Inc. ("Voltage") and nuBridges, Inc. ("nuBridges").  *See, Protegrity Corp. v. nuBrudges, Inc.*, No. 3:10-cv-00809 (RNC); *Protegrity Corp. v. Voltage Security, Inc.*, No. 3:10-cv-755 (RNC).  As the Court knows, Voltage recently filed a request for *ex parte* reexamination of the '201 patent, which is now pending before the United States Patent and Trademark Office ("PTO").  See Cass Dec., Exhibit B (without exhibits).  Voltage's request identifies twelve separate "substantial new questions" of patentability based on nine separate prior art references, all of which show that the methods claimed in the '201 patent were publicly known for more than a decade before the '201 patent application was filed.  Voltage has requested a stay in its case.  Ingrian and Safenet now request a stay of this action.

## III.   ARGUMENT.

### A.      Legal Standard.

---

(Continued)

filed an Amended Answer on September 2, 2010 [Dkt. 80, 81].  On the same date, Safenet and Ingrian answered, advancing the same defenses and counterclaims that Ingrian asserted previously.  *See*, Answers to Amended Complaint, [Dkt 82, 83].

Oral Argument
Requested

Whether to issue a stay pending reexamination rests in the sound discretion of the district court. *See Implicit Networks, Inc. v. Advanced Micro Devices, Inc.*, No. C08-184JLR, 2009 U.S. Dist. LEXIS 14467, at *4-5 (W.D. Wash. Feb 9, 2009). Courts recognize, however, that "there is 'a liberal policy in favor of granting motions to stay proceedings pending the outcome' of reexamination." *See Ho Keung Tse v. Apple Inc.*, No. C 06-06573 SBA, 2007 U.S. Dist. LEXIS 76521, at *4 (N.D. Cal. Oct. 4, 2007) (*quoting ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)). Indeed, Congress created the reexamination process in order to allow the PTO to exercise its "specialized [patent] expertise to reduce costly and time-consuming litigation." *Pactool Int'l Ltd. v. Dewalt Indus. Tool Co.*, No. C06-5367 BHS, 2008 U.S. Dist. LEXIS 11276, at *3 (W.D. Wash. Feb. 1, 2008) (citation omitted).

In deciding whether to stay an action pending reexamination, courts have generally considered three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Perricone v. Unimed Nutritional Servs., Inc.*, No. CIV. A. 301cv512 (CFD), 2002 U.S. Dist. LEXIS 17613, at *2 (D. Conn. July 18, 2002) (citation omitted); *see also, Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, No. C 06-2252 SBA, 2007 U.S. Dist. LEXIS 18785, at *4 (N.D. Cal. Feb. 26, 2007) (*citing Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1110 (N.D. Cal. 2006); *KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03116 JSW, 2006 U.S. Dist. LEXIS 15754, at *4-5 (N.D. Cal. Mar. 16, 2006).

**B.     A Stay is Warranted Pending the Outcome of The Reexamination of the '201 Patent.**

In this case, all three of these factors weigh in favor of a stay. A stay will not unduly prejudice Protegrity, which has long been content to let this case sit. A stay will also give the

Oral Argument
                                                                                        Requested

Court the benefit of the reexamination process, which could narrow the issues in the case and streamline remaining discovery, if not eliminate the '201 patent entirely.  Finally, although the parties have addressed claim construction and engaged in limited discovery, there remains a great deal of work for the parties and the Court, all of which could be wasted if the '201 patent is declared unpatentable or is amended in reexamination. [2]

> 1.      **A Stay Will Not Unduly Prejudice Protegrity or Present a Clear Tactical Disadvantage to Protegrity.**

By statute, reexamination proceedings must be conducted by the PTO with "special dispatch."  35 U.S.C. § 305.  Currently, reexaminations take about 18 months to complete.  That is far less time than Protegrity has allowed to pass thus far.

To show prejudice, Protegrity will have to show more than mere delay because, incident to the reexamination, "[m]ere delay … does not demonstrate undue prejudice." *Nanometrics*, 2007 U.S. Dist. LEXIS 18785, at *9; *see also Implicit Networks,* 2009 U.S. Dist. LEXIS 14467, at *9.  This case has progressed slowly, for which Protegrity has only itself to blame.  Protegrity has been content throughout to sit on its hands.  Initially, Protegrity failed entirely to provide more than cursory infringement contentions until compelled to do so.  Following the Markman ruling, it took no initiative to move forward on any point.  And, even after the failed settlement conference on October 15, 2010 (which Defendants undertook to initiate), Protegrity has remained torpid and did nothing to move this case forward.

A stay, moreover, would not reduce by one penny the damages Protegrity would be

---

[2]      Also, even though the Court has entered a *Markman* ruling, PTO statistics reveal that there is a 67% chance the claims of the '201 patent will be amended in reexamination. Amendments could very well require further claim construction, as the Court's current *Markman* ruling could be incomplete, or inconsistent with the PTO's determination.  It makes sense, therefore, to wait and see how, or if, the claims of the '201 patent emerge from reexamination.

Oral Argument
                                                                 Requested

entitled to if it prevails on liability.  Assuming the claims of the '201 patent survive

reexamination untouched (*i.e.*, the claims are identical to the original claims), Protegrity would

be "entitled to infringement damages, inter alia, for the period between the date of issuance or

the original claims and the date of issuance of the reexamined claims."  *See Laitram Corp. v.*

*NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) (citations omitted).  Should the claims of the

'201 patent be amended, Protegrity would be "entitled to infringement damages only for the

period following the issuance of the reexamination certificate."  *Id.*  And, of course, if the claims

of the '201 patent are declared unpatentable, that will mean that Protegrity was not entitled to

damages in the first place.  Protegrity would not be prejudiced by a stay because, either way, it

will be entitled to those damages that it can prove at trial.  This factor, therefore, weighs

decidedly in favor of granting a stay.

## 2. A Stay Will Simplify Issues and Trial.

Reexamination is almost certain to benefit the parties and the Court in this case.  It will

likely narrow and focus the issues.  And a comprehensive PTO reconsideration may eliminate

ambiguity and the risk of disparate results among the three cases involving the '201 patent now

on this Court's docket.  This factor, therefore, also weighs in favor of granting a stay.

And, most significantly, "[w]aiting for the outcome of the reexamination could eliminate

the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by

providing the Court with the opinion of the PTO."  *Ho Keung Ts*e, 2007 U.S. Dist. LEXIS

76521, at *9-10; *Nanometrics*, 2007 U.S. Dist. LEXIS 18785, at *2-3.  In fact, the reexamination

process was implemented in order to shift the complex and fact intensive burden of determining

patent validity from the courts to the PTO.  *Perricone*, 2002 U.S. Dist. LEXIS 17613, at *5-6

(citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983)).  Given the strong

Oral Argument
Requested

likelihood that one or more of its claims will be narrowed during reexamination, *see Nanometrics*, 2007 U.S. Dist. LEXIS 18785, at *7 (finding the PTO "changes some claims in approximately sixty-four percent" of reexaminations) (citations omitted), there is a real possibility that the scope of Protegrity's claims would change enough that it could not prove infringement.  Even more compelling, the PTO cancels all claims in more than one out of every ten patents in reexamination.  *Id.* (finding the "PTO cancels all claims in approximately twelve percent of all reexaminations") (citations omitted).  There is, thus, a distinct possibility that the PTO will find the '201 patent invalid.  *See Nanometrics*, 2007 U.S. Dist. LEXIS 18785, at *7.  Either outcome would fundamentally alter the scope of this litigation.

If this case is not stayed and the PTO finds that some or all of the claims of the '201 patent are unpatentable, the Court and the parties will have wasted time and resources on litigation that is moot.  If, improbably, all of the claims survive intact, the stay would not harm the parties.  On the contrary, it would aid the Court and the parties, who would have the benefit of the PTO's view on the meaning and validity of the claims.

### 3.    Discovery Is Not Complete and A Trial Date Has Not Been Set

The third factor to consider prior to granting a stay is "whether discovery is complete and whether a trial date has been set."  *Aten Int'l Co., LTD. v. Emine Tech. Co.*, No. SACV 09-0843 AG (MLGx), 2010 U.S. Dist. LEXIS 46226 (C.D. Cal. Apr. 12, 2010), at  *20.  Although this factor weighs heavily in favor of a stay when the case is in the early stages of litigation, *id.*; *see also Nanometrics*, 2007 U.S. Dist. LEXIS 18785, at *2, courts will grant stays pending reexamination even where discovery is well underway.  *See Aten Int'l*, 2010 U.S. Dist. LEXIS 46226 , at *2 (granting a stay where parties had been litigating for over three years, had exchanged interrogatories and document requests, but depositions and expert discovery had not taken place); *Network Appliance, Inc. v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2010

Oral Argument
                                                                       Requested

U.S. Dist. LEXIS 20732 (N.D. Cal. Feb. 11, 2010), at *10 (staying case in "middle stages of litigation" despite the fact that some discovery and claim construction had been done).

In this case, while some discovery has occurred and *Markman* findings have been issued, substantial work remains to be done by the parties and the Court, all of which will be wasted if the PTO significantly amends or cancels any of the claims in the '201 patent.  To date, the parties have not expended any resources noticing, preparing for or taking *any* depositions, nor have they discussed the subject.  The parties, likewise, have not exchanged expert disclosures or engaged in expert discovery – both of which will require significant time and resources.  Finally, a trial date has not been set, and, in fact, an updated scheduling order is not in place, nor has one been proposed or discussed.  A stay will, therefore, conserve substantial Court and party resources.  This factor, accordingly, also favors a stay.

**C.     A Comprehensive Stay Is Warranted Because It Will Serve Judicial Efficiency.**

Although the reexamination request is directed only to the '201 patent, a stay should be entered on all facets of this case, excepting Defendants' Motion to Dismiss Count II, which is already scheduled for oral argument.  Defendants' case will necessarily require substantial overlapping documentary, testimonial and expert discovery on both liability and damages issues.  A partial stay would, therefore, generate significant diseconomies and inefficiencies, requiring the parties and the Court to duplicate their efforts and waste valuable resources.

Where reexamination of fewer than all of the patents in suit is sought, courts may nonetheless issue a complete stay in order to conserve both the parties' and the Court's resources.  *See Pacesetter, Inc. v. Cardiac Pacemakers, Inc.*, No. 02-1337 (DWF/SRN), 2003 U.S. Dist. LEXIS 27445, at *6 (D. Minn. Nov. 17, 2003) (granting complete stay pending reexamination of two of four asserted patents).  The existence of "common witnesses," "common

Oral Argument
                                                                              Requested

underlying technology," "common inventors," or "common documents" provide additional reasons to issue a complete, rather than partial, stay. *See id.*; *see also Eberle v. Harris*, No. 03-5809 (SRC), 2005 U.S. Dist. LEXIS 31885, at *10-11 (D.N.J. Dec. 7, 2005).

Here, the discovery that has yet to take place involves all three of the patents in suit, not just the '201 patent. There are common witnesses, common underlying technology, common inventors and common documents. Without a comprehensive stay the parties will be forced to proceed with discovery on the '980 and '129 patents now and then months later, following the reexamination process, face the prospect of covering much of the same ground conducting discovery on the '201 patent.

For example, Ulf T. Mattsson is Protegrity's chief technology officer and, in addition to being an "inventor" of the '980 and '129 patents, was identified by Protegrity as the person who "designed the implementation of" all of the patents in suit, including the '201 patent. *See* Protegrity's Response to Ingrian's First Set of Interrogatories, No. 1. See Cass Dec., Exhibit C. Another common witness is Hans Alsten, who was indentified as a programmer on both the '201 and '980 patents, and a member of the development team for the '980 and '129 patents. *See* Protegrity's First Supplemental Response to Ingrian's First Set of Interrogatories, No. 5. See Cass Dec., Exhibit D. A comprehensive stay would require Mr. Mattsson and Mr. Alsten, among others, to prepare for and participate in one deposition, while a partial stay would require both witnesses - and the lawyers for both parties – to prepare for and participate in two.

In addition, Protegrity has identified DataSecure, one of Ingrian's products, as infringing all three patents in suit. The technology, witnesses, and documents relating to DataSecure products are, therefore, relevant to all three patents. Further, one of Protegrity's products (Secure.Data Version 3) is alleged to embody all three inventions, and the later DPS Version 4 is

Oral Argument
Requested

alleged to embody two of the three inventions.  *See* Exhibit D, No. 5.  It follows once again that any technology, witnesses, and documents relating to those products will be common.

Not only would a partial stay force the parties to duplicate efforts, it would be exceedingly difficult to identify the witnesses, documents, and underlying technology relevant to only the '980 and '129 patents in an effort to conduct any meaningful discovery.  A comprehensive stay is warranted.

### D.    In the Alternative, A Stay of the Claims Related to the '201 Patent Should be Granted

If the Court determines that the parties should proceed with the claims related to the '980 and '129 patents pending reexamination of the '201 patent, it should nonetheless stay the claims related to the '201 patent.  Although a partial stay would require duplicative efforts, it would nevertheless provide the Court with the benefit of the PTO's expertise regarding the '201 patent.

A partial stay would still allow the Court to rule on Defendants' Motion to Dismiss [Dkt. 70], which could eliminate the claims related to the '980 patent entirely.[3]  Defendants would also be in a position to file a Summary Judgment motion for non-infringement of the '129 patent, giving the Court an opportunity to dispose of claims related to that patent as well.  This could leave only the '201 patent at issue in this case.

---

[3]     Notably, notwithstanding the CMO and the Sedona Principles on which it is founded, Protegrity's initial infringement contentions, filed on December 15, 2008, did nothing but parrot the words of the three patents in suit and failed entirely to set forth specific facts demonstrating alleged infringement.  Following repeated requests by Defendants for more details and after a motion to compel Protegrity to provide proper infringement contentions [Dkt. 62], Protegrity served revised infringement contentions on June 29, 2010.  See Dkt. 68 (Notice of Service).  When those revised infringement contentions did not amend or amplify any language related to the '980 patent, Defendants filed a Motion to Dismiss Count II of the Complaint on July 16, 2010 [Dkt. 70].  The Court recently requested oral argument on this motion, now scheduled for January 26, 2011.

Oral Argument
Requested

Accordingly, at minimum, a partial stay related to the '201 patent is warranted.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay this litigation, with the exception of the pending Motion to Dismiss Count II, pending the outcome of Voltage's request for *ex parte* reexamination and continue the stay during the reexamination proceedings.  In the alternative, Defendants request a partial stay of the claims related to the '201 patent.


Dated:  January 14, 2011                          _/s/ William J. Cass_____
                                                  William J. Cass
                                                  Cantor Colburn LLP
                                                  20 Church Street, 22nd Floor
                                                  Hartford, CT 06103
                                                  (860) 286-2929
                                                  (860) 286-0115 (fax)
                                                  Email: wcass@cantorcolburn.com

                                                  Wilson M. Brown, III
                                                  Gregory J. Lavorgna
                                                  Henry Blanco White
                                                  Anna F. Lesovitz
                                                  DRINKER BIDDLE & REATH LLP
                                                  One Logan Square, Suite 2000
                                                  Philadelphia, PA  19103
                                                  (215) 988-2700 - telephone
                                                  (215) 988-2757 – facsimile

Oral Argument
Requested

THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

PROTEGRITY CORPORATION,                    )
                                           )
                        Plaintiff,         )
                                           )
v.                                         )        Civil Action No. 3:08-cv-618
                                           )
INGRIAN NETWORKS, INC., and                )
                                           )
SAFENET, INC.                              )
                                           )
                                           )
                        Defendants.        )
                                           )
_____)

**CERTIFICATION OF ANNA F. LESOVITZ IN SUPPORT OF
DEFENDANTS INGRIAN NETWORKS and SAFENET, INC.
FOR A STAY PENDING REEXAMINATION**

I, Anna F. Lesovitz under penalty of perjury, declare and state the following:

In a good faith effort to resolve the issues contained in this Motion without intervention of the Court, I called opposing counsel, Woodrow H. Pollack, on January 13, 2011 to ask that Protegrity stipulate to stay this action pending the outcome of Voltage's request for *ex parte* reexamination of the '201 patent.  Protegrity's counsel responded on the same date that Protegrity would not agree to any form of a stay.

Dated:  January 14, 2011                 ___/s/_Anna F. Lesovitz_____
                                         Anna F. Lesovitz

                                         *Counsel for Defendants, Ingrian Networks, Inc.,
                                         and Safenet, Inc.*

## CERTIFICATION OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party via the ECF website on the 14th day of January, 2011.

_/s/ William J. Cass_____
William J. Cass